IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 19-00056 HG-01 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THELMA PASCUA-SUYAT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER DENYING DEFENDANT THELMA PASCUA-SUYAT'S
MOTION FOR COMPASSIONATE RELEASE (ECF No. 35)**

Pursuant to a plea agreement, Defendant Thelma Pascua-Suyat entered a guilty plea to wire fraud in violation of 18 U.S.C. § 1343.  (ECF Nos. 8 and 9).  Defendant Pascua-Suyat agreed that she defrauded Ki-Hana Nursery over more than one million dollars when acting as its bookkeeper.  (ECF No. 8, PageID #s 19-22).  On June 3, 2019, the Court accepted the guilty plea and adjudged her guilty.  (ECF No. 13).

On September 30, 2019, the Court sentenced her to 43 months in prison, 3 years of supervised release, and restitution of $1,167,895.47.  Defendant Pascua-Suyat was ordered to self-surrender on November 12, 2019.  (ECF Nos. 23, 28).

Defendant Pascua-Suyat is incarcerated at FCI Phoenix's satellite camp in Arizona.  She has a projected release date of November 29, 2022.  (ECF No. 35-2, PageID # 296;

Case 1:19-cr-00056-HG   Document 51   Filed 01/13/21   Page 2 of 14   PageID #: 603

https://www.bop.gov/inmateloc/ (input Register Number 06314-0122) (last visited January 13, 2021)).

Defendant Pascua-Suyat's filings state that she is 65 years old, overweight (5 feet tall and 139.6 pounds, giving her a Body Mass Index ("BMI") of 27.3), and that she has hyperlipidemia and prediabetes. These statements are supported by the sealed medical records submitted to the Court. (ECF No. 38, PageID #s 437, 439-40, 442).

Defendant Pascua-Suyat moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The basis for her motion is the COVID-19 pandemic. Defendant Pascua-Suyat contends that her age and medical conditions make her vulnerable to complications if she contracts COVID-19.

After considering Pascua-Suyat's medical conditions, the time remaining on her sentence, and her history, the Court concludes that she has not demonstrated that extraordinary and compelling circumstances warrant a reduction in her sentence.

## STANDARD OF REVIEW

A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances. Dillon v. United States, 560 U.S. 817, 824-25 (2010).

On December 21, 2018, Congress passed the First Step Act of

2018.  PL 115-391, December 21, 2018, 132 Stat. 5194.  The First Step Act amended 18 U.S.C. § 3582(c), the statute governing the limited circumstances under which the trial court may evaluate a motion for reduction of sentence.

The First Step Act altered the statute in Section 3582(c)(1)(A) to allow a defendant to request the trial court reduce his sentence through a motion for compassionate release, but the statute requires the defendant to first present his request for release to the Bureau of Prisons.  18 U.S.C. § 3582(c)(1)(A).

18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, provides, in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment...after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>   (i)  extraordinary and compelling reasons warrant
>        such a reduction;
> ...
>        and that such a reduction is consistent with
>        applicable policy statements issued by the
>        Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

## II. SECTION 3582(c)(1)(A) AS AMENDED BY THE FIRST STEP ACT

### A.   Mandatory Procedural Requirement

The statute allows the Court to consider a defendant's request for compassionate release only after the defendant has first presented his request to the Bureau of Prisons ("BOP").  18 U.S.C. § 3582(c)(1)(A); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

The Parties agree that the Defendant has complied with the procedural requirement of 18 U.S.C. § 3582(c)(1)(A) and that the Court may consider the motion for compassionate release.

### B.   Merits Of Defendant's Request For Compassionate Release

If a defendant has complied with the mandatory procedural requirement set forth in 18 U.S.C. § 3582(c)(1)(A), the District Court may reduce a term of imprisonment, including the grant of compassionate release, upon finding "extraordinary and compelling reasons" consistent with applicable policy statements of the Sentencing Commission.

The Sentencing Commission's policy statement is provided in United States Sentencing Guidelines § 1B1.13:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

>    (1)(A)   Extraordinary and compelling reasons warrant the reduction; or
>
>    (B)   The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
>    (2)   The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>    (3)   The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

If Defendant is not 70 years of age and was not sentenced pursuant to 18 U.S.C. § 3559(c), Defendant is only entitled to relief if he demonstrates:

>    (1)   extraordinary and compelling reasons warrant a sentence reduction;
>
>    (2)   he is not a danger to the safety of others or the community; and,
>
>    (3)   any requested reduction is consistent with the policy statement.

United States v. Gill, 2020 WL 2084810, *2 (E.D. Cal. Apr. 30, 2020).

**C.   Extraordinary And Compelling Reasons**

The Sentencing Commission's Commentary Application Notes for Guideline § 1B1.13 provides the definition of "extraordinary and compelling reasons."  The Court agrees with the district courts

5

in the Ninth Circuit that have concluded that Section 1B1.13 and its definition of "extraordinary and compelling reasons" applies to motions for compassionate release even though the sentencing guideline was not separately amended following the passage of the First Step Act.  See Riley v. United States, 2020 WL 1819838, *8 (W.D. Wash. Apr. 10, 2020) (collecting cases); United States v. Shields, 2019 WL 2359231, *4 (N.D. Cal. June 4, 2019).

Sentencing Guideline Section 1B1.13's Commentary Application Notes explain that extraordinary and compelling reasons exist when:

(A) **Medical Condition of the Defendant.**–

  (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

  (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B)   **Age of the Defendant.**–The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C)   **Family Circumstances.**–
        (i)   The death or incapacitation of the caregiver of the defendant's minor child or minor children.

        (ii)  The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

    (D)   **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Court has the discretion to determine whether other extraordinary and compelling reasons exist, as stated in paragraph (D), when ruling on motions for compassionate release. United States v. Brooker, 976 F.3d 228, 237, 2020 WL 5739712, *7 (2d Cir. Sept. 25, 2020); United States v. Hernandez, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020).

## PROCEDURAL HISTORY

On April 19, 2019, an Information was filed charging Defendant Thelma Pascua-Suyat with one count of wire fraud in violation of 18 U.S.C. § 1343.  (Information, ECF No. 1).

The Information charged that from a date unknown but by at

least December 2008 and continuing to in or about January 2016, Defendant Pascua-Suyat exploited her position as the trusted bookkeeper of Ki-Hana Nursery to gain access to the funds, accounts, credit instruments, computers and Quickbooks accounting software of Ki-Hana Nursery in order to pay her and her husband's personal credit card bills and to make payments on her personal mortgage.  (Id. at PageID #s 3-4).  Over the course of her scheme to defraud, the Defendant fraudulently converted the sum of approximately $1,313,631.75 from Ki-Hana Nursery.  (Id. at PageID # 5).

On May 15, 2019, Defendant pled guilty, pursuant to a plea agreement, to the one count of the Indictment.  (ECF Nos. 5-13).

On September 30, 2019, the Court sentenced her to 43 months in prison, 3 years of supervised release, and restitution of $1,167,895.47.  (ECF No. 28).

On November 5, 2020, Defendant filed a Motion for Compassionate Release.  (ECF No. 35).

On November 16, 2020, the Government filed its Opposition. (ECF No. 40).

On November 23, 2020, Defendant filed her Reply.  (ECF No. 41).

On November 30, 2020, the case was reassigned to United States District Judge Helen Gillmor.

On December 21, 2020, Defendant filed a Motion for Leave to

Supplement the Record.  (ECF No. 46).

On December 22, 2020, the Court granted Defendant's Motion for Leave to Supplement the Record.  (ECF No. 47).

On January 5, 2021, the Government filed its Notice of Non-Response to Defendant's Supplement.  (ECF No. 49).

The Court elects to decide the matter without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

## **ANALYSIS**

Defendant Pascua-Suyat contends that extraordinary and compelling circumstances justify her early release.  She relies on the risks she faces if she contracts COVID-19.  Defendant is 65 years old.

Defendant bears the burden to demonstrate that extraordinary and compelling reasons exist that warrant immediate release from incarceration.  United States v. Greenhut, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020).

A defendant's general concerns about potential exposure to COVID-19 while incarcerated do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence. United States v. Eberhart, 448 F.Supp.3d 1086, 1089-90 (N.D. Cal. Mar. 25, 2020); United States v. Carver,   F.Supp.3d   , 2020 WL 1892340, *3 (E.D. Wash. Apr. 8, 2020).

The Centers for Disease Control ("CDC") has identified

certain categories of individuals that are at a higher risk for severe illness due to COVID-19.  The list includes people with conditions such as: chronic lung disease, moderate or serious asthma, serious heart conditions, obesity, chronic kidney disease requiring dialysis, liver disease, diabetes, or individuals who are immunocompromised.  See United States v. Jones, Crim. No. 13-00860 LEK-03, 2020 WL 2331678, *5 (D. Haw. May 11, 2020).

I.   **Medical Condition**

According to the CDC, a person's risk of a severe illness (one that may require hospitalization, intensive care, or a ventalator) from COVID-19 increases with age.  The CDC website explains that "people in their 50s are at higher risk for severe illness than people in their 40s.  Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s.  The greatest risk for severe illness from COVID-19 is among those aged 85 or older." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited January 13, 2021).  Defendant Pascua-Suyat is 65.

The CDC currently lists the following conditions for people of any age as creating an increased risk of a severe illness from COVID-19:

    *Cancer

    *Chronic kidney disease

    *COPD (chronic obstructive pulmonary disease)

    *Down Syndrome

    *Heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies

    *Immunocompromised state (weakened immune system) from solid organ transplant

    *Obesity (body mass index [BMI] of 30 kg/m2 or higher but < 40 kg/m2)

    *Severe Obesity (BMI ≥ 40 kg/m2)

    *Pregnancy

    *Sickle cell disease

    *Smoking

    *Type 2 diabetes mellitus

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC AA refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited January 13, 2021).

    The CDC also lists the following as possibly increasing the risk of a severe illness from COVID-19:

    *Asthma (moderate-to-severe)

    *Cerebrovascular disease (affects blood vessels and blood supply to the brain)

    *Cystic fibrosis

    *Hypertension or high blood pressure

    \*Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines

    \*Neurologic conditions, such as dementia

    \*Liver disease

    \*Overweight (BMI > 25 kg/m2, but < 30 kg/m2)

    \*Pulmonary fibrosis (having damaged or scarred lung tissues)

    \*Thalassemia (a type of blood disorder)

    \*Type 1 diabetes mellitus

Id.

Under the CDC's guidance, Defendant Pascua-Suyat being overweight (5 feet tall and 139.6 pounds, giving her a BMI of 27.3) possibly increases her risk of a severe illness if she contracts COVID-19.  Pascua-Suyat also argues that her hyperlipidemia and prediabetes may increase her risk of a severe illness if she contracts COVID-19.  (ECF No. 35-1, PageID #s 284-85).

While Defendant Pascua-Suyat has legitimate concerns about contracting COVID-19, her age and medical conditions, standing alone, are not an exceptional and compelling reason that warrants a reduction in sentence.  Similarly, she fails to demonstrate that her ability to provide self-care has been sufficiently diminished to justify her release.

## II. Section 3553(a) Factors Do Not Support Compassionate Release

The amount of time remaining on Defendant Pascua-Suyat's sentence is an important consideration in evaluating compassionate release. Defendant Pascua-Suyat has only been in custody since November 12, 2019. (ECF No. 23). Even if credit for good behavior is taken into account, she still has about two years left to serve as she has a projected release date of November 29, 2022. (ECF No. 35-2, PageID # 296; https://www.bop.gov/inmateloc/ (input Register Number 06314-0122) (last visited January 13, 2021)).

At the time of Defendant's sentencing, the Court determined that a 43-month sentence appropriately reflected the seriousness of her offense, promoted respect for the law, and punished her for her wire fraud of more than a million dollars. Her acts had devastating effects on the owners of the company she defrauded. Defendant's theft of funds from her employer persisted over the course of seven years. The Court finds that releasing Defendant Pascua-Suyat now, even to home confinement, would not adequately reflect the seriousness of her offense, promote respect for the law, punish her for her crime, or provide deterrence to others.

The Court is troubled by statements in Defendant's release plan. Defendant Pascua-Suyat simply says that, if released, she plans to live with her ex-husband on Maui. (ECF No. 35-4. PageID # 300). Concerns were expressed in the Presentence Report,

however, that Pascua-Suyat divorced her husband to shield him from liability for her actions.  (ECF No. 27, PageID # 194).  Pascua-Suyat still lists her ex-husband as her "SIGNIFICANT OTHER" on BOP records.  (ECF No. 35-11, PageID # 426).  The release plan raises a concern that Defendant Pascua-Suyat proposes she live with a person who may be in concert with her in an attempt to shield money from her victims.

Under § 3582(c)(1)(A), only extraordinary and compelling reasons can justify a reduction in an inmate's sentence.  Having balanced the seriousness of Defendant Pascua-Suyat's crime, the amount of time remaining on her sentence, her conduct while incarcerated, her criminal history, and the totality of the medical information she has submitted, the Court determines that the Defendant has not established extraordinary and compelling reasons such that a reduction in her sentence is warranted.

## CONCLUSION

Defendant Pascua-Suyat's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 13, 2021.

Helen Gillmor
United States District Judge